UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRIAN JAMES HOLLAND,

        Petitioner,

v.                          Case No.  3:21-cv-1277-BJD-PDB
                                              3:18-cr-0047-BJD-PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

## **ORDER**

### **I. STATUS**

Petitioner, Brian James Holland (Holland), a federal inmate, is proceeding *pro se* on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Doc. 1; Crim. Doc. 90; Motion).[1] The government filed a Response in Opposition to the Motion (Civ. Doc. 5; Response), and Holland filed a Reply to the Response (Civ. Doc. 6; Reply). Holland raises thirteen grounds for ineffective assistance of trial counsel. Civ. Doc. 1 at 4–37; Crim. Doc. 90 at 4–37. Although Holland requests an evidentiary hearing, the Court finds that a hearing is not warranted

---

[1] Citations to the record in the civil case will be denoted as "Civ. Doc. __," and citations to the record in the underlying criminal case will be denoted as "Crim. Doc. __."

pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing § 2255

Proceedings.[2]

## II. FACTUAL AND PROCEDURAL HISTORY

On March 14, 2018, the grand jury returned an indictment charging

Holland with one count of aggravated sexual abuse with force within the

maritime and territorial jurisdiction of the United States on a foreign vessel in

violation of 18 U.S.C. § 2241(a) and 18 U.S.C. § 7. Crim. Doc. 19. The

indictment alleged that on February 27, 2018, Holland digitally penetrated

I.R.,[3] who was sitting next to him in a hot tub on a Carnival cruise ship. Crim.

Doc. 19. On July 18, 2018, a jury convicted Holland as charged. Crim. Doc. 58.

On October 22, 2018, this Court sentenced him to a ten-year term of

imprisonment followed by a five-year term of supervised release. Crim. Doc.

72.

---

[2] Rule 8(a) of the Rules Governing § 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials to determine whether an evidentiary hearing is warranted before resolving a motion under § 2255. However, "[t]he district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a § 2255 movant is not entitled to an evidentiary hearing "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citations omitted)).

[3] I.R. was eighteen years old at the time, but she is unable to read or write, has a speech impediment, and functions intellectually on a fourth-grade level. *See* Crim. Doc. 79 at 56–58, 68–69, 136.

With help from counsel, Holland appealed his conviction and sentence to the Eleventh Circuit Court of Appeals. Crim. Doc. 74. On appeal, he argued that: (1) the evidence at trial was insufficient to support his conviction; (2) this Court abused its discretion by allowing irrelevant and overly prejudicial testimony regarding Holland's dreadlocks hairstyle at the time of the incident; and (3) the prosecutor's statements about Holland's appearance during closing arguments amounted to prosecutorial misconduct and deprived Holland of a fair trial. *See United States v. Holland*, No. 18-14721-BB, 2019 WL 1277131, *19–35 (11th Cir. Mar. 18, 2019) (initial brief). The Eleventh Circuit affirmed Holland's conviction and sentence on December 6, 2019, and issued the mandate on July 27, 2020. *See* Crim. Docs. 86, 88; *United States v. Holland*, 796 F. App'x 628 (11th Cir. 2019) (per curiam). The United States Supreme Court denied Holland's petition for a writ of certiorari on March 8, 2021. *See* Crim. Doc. 89; *Holland v. United States*, 141 S. Ct. 1526 (2021).

Holland timely filed the instant Motion on December 21, 2021. Civ. Doc. 1 at 12; Crim. Doc. 90 at 12.

### III.  LEGAL STANDARDS

A person in federal custody may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the

sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In short, only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. *United States v. Addonizio*, 442 U.S. 178, 184–85 (1979). The movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015); *see also Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017) (collecting cases).

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (*per curiam*) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim that a criminal defendant has received ineffective assistance of counsel in violation of the Sixth Amendment "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's conduct amounted to constitutionally deficient performance; and (2) counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S.

at 687–88. To satisfy the "performance" prong, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness," *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 688), which is a highly deferential standard, *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689–90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989) (per curiam) (same).

As observed by the Eleventh Circuit:

> [The test for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted).

To satisfy the "prejudice" prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Martin*, 949 F.3d at 667 (citing *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

A court considers the totality of the evidence in determining whether the *Strickland* test has been satisfied. *Id.* at 695. If a petitioner makes an insufficient showing on one prong, the court need not reach the other prong. *Id.* at 697; *see also Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010) (stating that "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa"). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

## IV. DISCUSSION

### A.    Grounds One and Twelve

As Ground One, Holland alleges his trial counsel was ineffective when she failed to investigate "critical issues" and to present "critical defense

6

evidence," namely, I.R.'s swimsuit and Holland's trunks from the time of the incident.[4] Civ. Doc. 1 at 4, 13; Crim. Doc. 90 at 4, 13. As Ground Twelve, he alleges his trial counsel was ineffective when she failed to introduce his theory of defense at closing argument. *Id.* at 33. According to Holland, his defense should have been "based on the impression that Janie Crawford set this whole [thing] up so she [would] win a civil law suit against [C]arnival," but Ms. Yazgi refused to implement it because it sounded like a conspiracy theory. *Id.* Holland's claims in Grounds One and Twelve lack merit.[5]

"The decision whether to present a line of defense or even to investigate it, is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable." *Hardwick v. Crosby*, 320 F.3d 1127, 1162 n.146 (11th Cir. 2003) (internal citations and quotation marks omitted). Holland's challenge to his trial counsel's "strategic and tactical decisions . . . cannot be the basis for finding counsel ineffective." *Tejada*, 941

---

[4] Holland was represented by both Susan Yazgi and Waffa Hanania, even though his Motion seems to refer solely to Ms. Yazgi as his trial counsel.

[5] To the extent Holland attempts to raise new claims in his Reply, such claims are not properly before the Court. *See* Rule 2(b), Rules Governing Section 2255 Proceedings ("The motion must: (1) specify all the grounds for relief available to the moving party . . . ."); *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (per curiam) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (finding that a *pro se* litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a *pro se* litigant's reply brief").

F.2d at 1559. "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) (per curiam).

Holland has not met his burden of showing that his counsel's decision to not present I.R.'s swimsuit and Holland's trunks as evidence was so unreasonable that no competent attorney would have chosen it. While this evidence was collected, in light of the particular allegations in the underlying criminal case, it was not tested for DNA. *See* Crim. Doc. 79 at 246–47; *see also* Civ. Doc. 1-2 at 1–2, 4; Civ. Doc. 1-5 at 2; Crim. Doc. 90-2 at 1–2, 4; Crim. Doc. 90-5 at 2. Holland argues that had counsel introduced I.R.'s swimsuit into evidence, the jury would have seen that "the bottom half stopped at or above [I.R.'s] belly button," and would have concluded it was impossible for Holland "to get his hand down the front of her bathing suit without someone in the crowded hot tub noticing." Civ. Doc. 1 at 13; Crim. Doc. 90 at 13.[6]

First, to the extent Holland suggests that the only way the crime could have been committed was by accessing the front of I.R.'s bathing suit, that was not the only way the crime could have been committed. While I.R. testified that

---

[6] To the extent Holland suggests that I.R. was wearing a one-piece bathing suit, the ship security incident report attached to his Motion, shows that I.R. was wearing a two-piece suit consisting of "[s]horts" and a "[b]athing top." Civ. Doc. 1-2 at 1; Crim. Doc. 90-2 at 1.

Holland "rubbed on [her] private" area both over and under her swimsuit, there was no evidence which hand he used or from which side he digitally penetrated her. Crim. Doc. 79 at 20–21. There was also no evidence whether one or both pieces of I.R.'s bathing suit were partially or completely under the water. However, there was still enough evidence for the jury to convict Holland of the crime of aggravated sexual abuse by force when considering "all of the relevant evidence and testimony" in combination. *Holland*, 796 F. App'x at 632. The evidence included, *inter alia*, A.T.'s and K.L.'s testimony that they could not see what was going on under the water because of the bubbles, but they noticed how uncomfortable I.R. appeared to be and how she tried to scoot away from Holland every time he moved closer to her.[7] Crim. Doc. 79 at 89, 94–95, 104–05; *see also id.* at 82, 104 (stating that the witnesses could not fully see I.R.'s reaction because she was wearing sunglasses).

Further, Holland argues that counsel should have introduced the trunks he was wearing at the time of the incident as impeachment evidence against I.R., who stated in an interview that they were black rather than red. Civ. Doc. 1 at 13; Crim. Doc. 90 at 13. Because there was no other purpose for introducing this evidence, considering that Holland's identity was not at issue and the

---

[7] Notably, according to an FBI interview report form of A.T.'s interview, which is attached to and cited in Holland's Motion, when A.T. and K.L. left the hot tub, I.R. and Holland were still there. Civ. Doc. 1-4 at 2; Crim. Doc. 90-4 at 2.

trunks were not relevant to any material issue in the case, Holland has not shown that the evidence would have been admitted. Even assuming arguendo that the Court would have admitted it, Holland has not shown a reasonable probability of a different outcome.

Similarly, to the extent Holland argues his counsel should have presented his theory of defense that Ms. Crawford, I.R.'s adoptive mother, had "set this whole [thing] up so she [would] win a civil law suit against [C]arnival," *id.* at 33, Holland has not shown that counsel's tactical decision was so unreasonable that no competent attorney would have chosen it. While Holland submits that this theory should have been presented at closing argument, the jury had already heard about Ms. Crawford's civil lawsuit on behalf of I.R. against Carnival during her cross-examination. Crim. Doc. 79 at 72. Counsel was not ineffective when she failed to explore this issue further because it was immaterial to the underlying criminal case. Moreover, Holland has not demonstrated a reasonable probability of a different outcome had counsel had presented this theory of defense. Based on the foregoing, Holland is not entitled to relief on Grounds One and Twelve.

## B.    Ground Two

As Ground Two, Holland alleges his trial counsel was ineffective when she failed to strike Mr. Arendell (juror No. 27), Mr. Hernandez (juror No. 13),

and Ms. Rose (juror No. 25), for cause, which resulted in a biased jury. Civ.

Doc. 1 at 5, 14; Crim. Doc. 90 at 5, 14.[8]

The pertinent portions of Mr. Arendell's voir dire examination are as

follows:

> [MR. ARENDELL]:  . . . I was the medical practitioner in the
> emergency room. This is probably 1980 where there was a child
> sexual abuse case, and I examined the child and then gave my
> testimony.
>
> THE COURT:  I see.
> This alleged crime involves sexual -- alleged sexual assault, so it's
> important for me to know how you think that experience, as being
> both a treater and a witness -- or examiner and a witness, might
> affect your ability to sit fairly and impartially in this case.
>
> [MR. ARENDELL]:  I think I can be impartial.
>
> THE COURT:  You don't believe that that experience previously is
> going to affect your ability to sit and listen and to apply the
> presumption of innocence to Mr. Holland and --
>
> [MR. ARENDELL]:  No, sir.
>
> THE COURT:  -- hold the state to its burden of proof? You can do
> all of those things?
>
> [MR. ARENDELL]:  I believe so, sir.

Crim. Doc. 78 at 77–78.

---

[8] At defense counsel's request, which was unopposed by the government, the
Court struck Ms. Adolfie (juror No. 24) for cause because she was crying at sidebar
about a friend's child who had been violently raped. *See* Crim. Doc. 78 at 169. Then,
defense counsel exercised a peremptory challenge as to ten other jurors (Nos. 2, 3, 6,
7, 9, 16, 17, 22, 23, and 26). *See id.* at 170–74.

Later, the following exchange took place outside the presence of the jury:

MS. YAZGI:  Juror No. 27, James Arendell. He indicated that he's been an expert in child sex abuse cases and actually sex abuse examinations.
. . . I'd like to be able to ask him questions about that.

THE COURT:  I think we may have explored that sufficiently when he testified about his witness service as a child expert.
I'll consider that.

*Id.* at 136.

The Court then allowed further questioning of Mr. Arendell as follows:

THE COURT:  Thank you for joining us at sidebar. We're looking to preserve your privacy as well as the privacy of others involved. Your involvement as an expert witness in cases involving sexual assault -- in children as well? Is that right?

[MR. ARENDELL]:  Yes, sir.

THE COURT:  -- is, of course, of interest.
I asked you some questions about it, but we want to explore your experience and its consequences a little further, if that's okay.

[MR. ARENDELL]:  Okay.

THE COURT:  Ms. Hanania, you have questions for Mr. Arendell?

MS. HANANIA:  I do. I do. Thank you, Judge.
Is that a line of work that you're still doing?

[MR. ARENDELL]:  I'm actually working at an orthopaedic office right now, but I've got a clinic that's run like an ER, but we only do orthopaedic things now.

MS. HANANIA:  Okay. How long ago -- how long has it been since you worked in the field where you had a connection with these types of cases?

12

[MR. ARENDELL]:  It's been about 12 years.

MS. HANANIA:  Okay. Were you ever specifically trained in this field, or did you handle these cases because they walked into an ER where you happened to work?

[MR. ARENDELL]:  You want the truth with this, I'd assume.
I -- my very first job when I got out of school was in the Virgin Islands, and the -- how would I put this? The medical professionals lacked a lot.
And so, believe it or not, being fresh out of school, I was the smartest one in the whole area, and so I got stuck with most of the hard stuff.

MS. HANANIA:  Okay.

[MR. ARENDELL]:  And I was not that well trained. It's just I was the best that was there at the time.

MS. HANANIA:  So, part of the job, if you were to serve as a juror, would be to decide the credibility not just of regular -- I don't mean regular, but nonexpert witnesses as well as expert witnesses. And the Court will instruct you, of course, on the law as to how you should do that.
Would you have any difficulty, based on your prior experience, with applying the rules that the Court will give you to your determination of credibility for those witnesses?

[MR. ARENDELL]:  I don't believe so.

MS. HANANIA:  Okay. Would you feel some compunction to substitute your own expertise or experience in exchange for making a decision based on the evidence that is put before you?

[MR. ARENDELL]:  I mean, I think that question's kind of loaded. I think all of us come in here with a certain amount of, you know, preconceived thoughts, you know --

MS. HANANIA:  Yes, sir.

13

[MR. ARENDELL]: -- all based on, you know, our pasts.

MS. HANANIA: Yes, sir.

[MR. ARENDELL]: So I don't know how to answer that. I would just --

MS. HANANIA: I understand.

[MR. ARENDELL]: -- do the best I could to be nonprejudicial.

MS. HANANIA: Okay. When you were doing this kind of work, how many of these types of examinations did you -- were you involved with?

[MR. ARENDELL]: Well, I did 30 years in the ERs, and so I would say I've probably done a dozen cases.

MS. HANANIA: All right.

MR. TAYLOR: Are we talking about a dozen sexual assault examinations or cases? Is that --

[MR. ARENDELL]: Probably. That's a pretty good guess.

*Id.* at 157–60.

Similarly, Mr. Hernandez was questioned at sidebar, as follows:

THE COURT: Good afternoon, sir.
You responded in connection to the Court's last question regarding violent crime victimization, sexual assault victimization, or false accusation of a sexual assault.
Tell me what you were responding about.

[MR. HERNANDEZ]: . . . My wife, when she was younger, she was sexually assaulted. . . . I didn't know her at the time. She was younger, in a different country, in Greece. It was a family member of hers.

14

THE COURT:  Right.

[MR. HERNANDEZ]: So she shared that experience with me, but I wasn't any -- I don't think that's going to make me have an issue about that, but . . .

*Id.* at 121–22.

Then,  after the government had presented two of its witnesses, Ms. Rose was questioned outside the presence of the jury when she realized that she knew Denise Daniels, the victim/witness coordinator for the United States Attorney's Office. Crim. Doc. 79 at 74, 76. Ms. Rose advised the Court that she and Ms. Daniels went to church together thirteen years ago and the following exchange took place:

[MS. ROSE]:  . . . But when I saw Denise, it was like we went to church together, so I knew that was something I had to say. It's not going to affect my -- I'm going to listen to the evidence on both and pray for God to tell me whether I believe he's guilty or not.

THE COURT:  All right. Tell me, if you would, what influence you believe your previous awareness of this person might have on your ability to be fair and impartial in this case.

[MS. ROSE]:  I will be fair.

THE COURT:  All right.

[MS. ROSE]:  I have been praying for God to lead me as to what I hear and what I should, you know, decide, and this will not have anything -- affect it.

THE COURT:  All right.

15

[MS. ROSE]:  I just felt like I needed to say that.

THE COURT:  Yes, ma'am.
Do either of the parties wish any further voir dire of Ms. Rose on this issue?

MR. TAYLOR:  No, Your Honor. Thank you.

MS. YAZGI:  No. Thank you.

*Id.* at 76–77.

The Court finds that defense counsel was not ineffective when she did not strike these jurors. The decision to strike certain prospective jurors and leave others is a classic trial strategy. *See, e.g.*, *United States v. Hughes*, 840 F.3d 1368, 1382 (11th Cir. 2016); *Manning v. Florida*, 373 F. App'x 933, 935 (11th Cir. 2010) (per curiam).[9] The fact that defense counsel challenged only one of the seated jurors for cause is "strong evidence that [counsel] was convinced the [other] jurors were not biased and had not formed any opinions as to his guilt." *Skilling v. United States*, 561 U.S. 358, 396 (2010) (citing *Beck v. Washington*, 369 U.S. 541, 557–58 (1962)). Contrary to Holland's argument, the three jurors "exhibited no sign of prejudice" that the Court can discern, particularly considering that after questioning these jurors at sidebar, defense

---

[9] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited as persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

counsel decided to leave them on the panel. *Skilling*, 561 U.S. at 398.

Although Mr. Arendell indicated that all jurors bring "a certain amount of . . . preconceived thoughts" based on their past, he nevertheless stated that he could be impartial and would hold the government to its burden of proof, despite his prior medical experience. Crim. Doc. 78 at 77–78, 159. As the Supreme Court explained, jurors "need not enter the box with empty heads in order to determine the facts impartially." *Skilling*, 561 U.S. at 398. "It is sufficient if [they] can lay aside [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court." *Id.* at 398–99. And that is exactly what these jurors indicated to the Court during their questioning. *See* Crim. Doc. 78 at 179–80 (swearing that they would "render a true verdict, according to the law, evidence, and the instructions of this Court"). To the extent Holland argues that Mr. Arendell's first job in the Virgin Islands made him biased toward foreign medical examiners like Dr. Mbuthuma, who examined I.R. on the day of the incident, Civ. Doc. 1 at 14; Crim. Doc. 90 at 14, even assuming arguendo that was true, such bias would likely work in Holland's favor by discounting the results of the only sexual assault examination that I.R. underwent.

As to Mr. Hernandez and Ms. Rose, the record does not indicate they were unable to lay aside their impressions or opinions; to the contrary, each

one of them indicated they would listen to the evidence without partiality or bias. Crim. Doc. 78 at 121–22; Crim. Doc. 79 at 76–77. In addition, while Ms. Rose advised she would prayerfully consider both sides of the story, she acknowledged her personal responsibility to make a decision based on the evidence in the case. *See* Crim. Doc. 79 at 76 ("I'm going to listen to the evidence on both and pray for God to tell me *whether I believe* he's guilty or not. . . . I have been praying for God to lead me as to what I hear and what I should, you know, decide, and this will not have anything -- affect it." (emphasis added)). Because Holland has not demonstrated either deficient performance or any resulting prejudice, he is not entitled to habeas relief on Ground Two.

## C. Ground Three

In Ground Three, Holland alleges his trial counsel was ineffective during her opening statement when she purportedly "lied to the jury." Civ. Doc. 1 at 7; Crim. Doc. 90 at 7. Holland explains that counsel's statement that he left the hot tub at least three times to get beer from the bar is inconsistent with his statement to counsel that he left the hot tub at least two times to get beer from a nearby bucket that he placed on a bench within ten to fifteen feet from the hot tub. Civ. Doc. 1 at 15; Crim. Doc. 79 at 12–13; Crim. Doc. 90 at 15.

Defense counsel was not ineffective during her opening statement. First, prior to the opening statements, the Court had instructed the jury that

"[o]pening statements are neither evidence nor argument." Crim. Doc. 78 at

188. In addition, counsel was not acting outside the wide range of reasonable

professional assistance when she told the jury what the case was about. *See*

*United States v. Breedlove*, 576 F.2d 57, 60 (5th Cir. 1978) (per curiam) ("The

purpose of an opening statement is to tell the jury what the case is about and

to outline the proof."). Even assuming counsel's performance was deficient,

there was no resulting prejudice, because the statements were not material to

the outcome. Since the government did not dispute that Holland left the hot

tub several times, it is immaterial whether he did that two times or three

times, and it is also immaterial whether he walked to the bar or to a nearby

bench. Moreover, after the opening statements, the jury had the opportunity

to hear all evidence, weigh it, and decide which side to believe with the benefit

of closing arguments from counsel. Having failed to establish either deficient

performance or resulting prejudice, Holland is not entitled to habeas relief on

Ground Three.

### D. Grounds Four Through Nine

Holland alleges his trial counsel was ineffective when she failed to

properly cross-examine and impeach I.R. (Ground Four), A.T. (Ground Five),

K.L. (Ground Six), Dr. Mbuthuma (Ground Seven), and Ms. Crawford (Ground

Nine), and when she failed to properly examine defense witness Judy

19

Malmgren (Ground Eight).[10] Civ. Doc. 1 at 8, 16–18, 20, 22, 24, 26; Crim. Doc. 90 at 8, 16–18, 20, 22, 24, 26.

With respect to Ms. Malmgren, Holland argues his trial counsel should have asked on direct examination: (1) how someone with long fingernails like Holland's could digitally penetrate a woman's vaginal opening without at least micro abrasions being inflicted to the vaginal opening or the vaginal canal[11]; and (2) whether, in Ms. Malmgren's prior experience, she had ever seen someone with injuries from fingernails resulting from digital penetration and how those injuries compared to Dr. Mbuthuma's findings. Civ. Doc. 1 at 24; Crim. Doc. 90 at 24. As the government states, if Holland's proposed questions had been asked, the answers thereto could have undermined his defense theory that a sexual assault did not occur or that he was not involved in it. The questions that defense counsel actually asked supported the defense theory that the abrasions could have resulted from causes other than sexual assault. *See* Crim. Doc. 80 at 19–22, 55. Because Holland's proposed questions would

---

[10] Although Holland's Motion refers solely to Ms. Yazgi, it was Ms. Hanania who examined both Dr. Mbuthuma and Ms. Malmgren during the trial. *See* Crim. Doc. 79 at 119–20, 136, 141, 147, 151, 155–83, 185–89; Crim. Doc. 80 at 5–23, 48–55.

[11] In Ground Seven, Holland argues his counsel should have asked Dr. Mbuthuma the same question. Civ. Doc. 1 at 22; Crim. Doc. 90 at 22. Ground Seven will be denied for the same reasons as Ground Eight.

not have aided his defense, counsel was not ineffective in questioning Ms. Malmgren. Therefore, Ground Eight is denied.

The Court turns to Grounds Four, Five, Six, Seven, and Nine pertaining to the cross-examination of the government's witnesses. "[T]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (emphasis in original; internal citation and quotation marks omitted). "A defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he can properly argue why the witness is less than reliable." *United States v. Frost*, 61 F.3d 1518, 1525 (11th Cir. 1995) (internal citation and quotation marks omitted), *modified on other grounds*, 77 F.3d 1319 (11th Cir. 1996) (per curiam). "Credibility issues are for the determination of the jury." *United States v. Chancey*, 715 F.2d 543, 546 (11th Cir. 1983).

A review of the record demonstrates that defense counsel effectively cross-examined the government's witnesses, choosing a line of questioning that was consistent with Holland's defense. As an initial matter, Holland points to certain discrepancies in the statements of the two minor witnesses, A.T. and

K.L., and I.R., such as whether Holland had dreadlocks or braids; whether his beer containers were white and red or blue; whether his trunks were red or black; and whether I.R. was wearing bikini or tankini. Civ. Doc. 1 at 8, 16–18, 20; Crim. Doc. 90 at 8, 16–18, 20. However, counsel was not ineffective when she did not specifically address these minor discrepancies on cross-examination, because they were both irrelevant and immaterial. As stated earlier, Holland's identity was not at issue. Moreover, Holland's hairstyle and the color of his trunks and beer cans, as well as I.R.'s particular swimsuit, were merely collateral matters. Even assuming defense counsel would have been allowed to cross-examine the witnesses about these discrepancies, Holland has not shown a reasonable probability of a different outcome.

Further, Holland claims that his counsel should have introduced I.R.'s audio and video recorded interview by child protection services and should have asked her additional questions, such as precisely how the sexual assault occurred, where the scratch marks on her legs came from, and whether she felt threatened in any way, etc. *See id.* at 8, 16–17. The Court finds that defense counsel was not ineffective when she failed to introduce I.R.'s interview or ask these additional questions because they could have undermined Holland's theory of defense. In addition, I.R.'s interview was subject to a protective order because it contained "particularly sensitive information." Crim. Doc. 23 at 1–2

22

("Defendant and defendant's counsel shall not disclose the materials or their contents directly or indirectly to any person or entity other than persons employed to assist in the defense or such persons to whom the Court may authorize disclosure.").

Holland also argues his counsel should have highlighted the discrepancy between I.R.'s testimony that she told Holland "don't do that" and "stop," and her interview statement that she did not speak during the incident.[12] Civ. Doc. 1 at 8, 16–17; Crim. Doc. 90 at 8, 16–17. The jury heard I.R.'s testimony that she told Holland "don't do that" and "stop." Crim. Doc. 79 at 41–42. The jury also heard A.T.'s and K.L.'s testimony that they did not hear I.R. speak and that "it was very loud in the hot tub." *Id.* at 87–88, 90, 109–10. With the benefit of such testimony, the jury found I.R.'s account of the events more credible. As the Eleventh Circuit stated, "the jury was permitted to reject Mr. Holland's interpretation of the evidence." *Holland*, 796 F. App'x at 632. Further:

> The jury was free to and did, in fact, choose an alternative, reasonable interpretation of the evidence. It chose to believe I.R.'s testimony that Mr. Holland repeatedly pulled her closer to him, ignored her requests for him to stop, and used force to digitally

---

[12] Holland argues that an additional question should have been asked about a statement that I.R. made before leaving the hot tub. However, Holland's counsel cannot be deemed ineffective for exploring the question on cross-examination when the Court already found the question objectionable on direct examination. *See* Crim. Doc. 79 at 27–30. To the extent Holland raises a question about any statements that I.R. might have made after leaving the hot tub, *see* Crim. Doc. 79 at 30–31, such statements are immaterial as to whether she spoke while in the hot tub.

penetrate her. It credited A.T.'s and K.L.'s testimony that Mr. Holland kept moving closer to I.R. each time she moved away, making her visibly uncomfortable. It elected to believe Ms. Crawford's characterization of I.R.'s reaction   immediately following her experience in the hot tub. Finally, it chose to accept Dr. Mbuthuma's testimony that I.R.'s injuries were consistent with forceful digital penetration and not accepted Ms. Malmgren's testimony that I.R.'s injuries could have been caused by something besides forceful digital penetration.

*Id.*

Further, Holland believes his counsel should have asked Ms. Crawford additional questions, including whether she was paid for adopting I.R., whether she was paid for the medical malpractice leading to I.R.'s condition, whether she was paid for I.R.'s disability, and whether she had set up this incident in order to receive payment from Carnival. Civ. Doc. 1 at 26; Crim. Doc. 90 at 26. The record indicates that counsel had already elicited pertinent information about I.R.'s birth, adoption, special needs, and functioning, as well as about Ms. Crawford's civil lawsuit against Carnival. Crim. Doc. 79 at 54, 56–60, 62, 67–70, 72–73. Counsel was not deficient for failing to explore additional questions that would have resulted in duplicative and/or immaterial evidence. "It is well-settled in this Circuit that a petitioner cannot establish an ineffective assistance claim simply by pointing to additional evidence that could have been presented," especially "when that evidence is merely cumulative." *Van Poyck v. Fla. Dep't of Corrs.*, 290 F.3d 1318, 1324 & n.7 (11th

Cir. 2002) (per curiam). As Holland has failed to establish either deficient performance or any resulting prejudice, he is not entitled to habeas relief in Grounds Four through Nine.

### E. Grounds Ten and Eleven

As Grounds Ten and Eleven, Holland alleges his trial counsel was ineffective when she failed to offer proper jury instructions and to object to misleading ones regarding: (1) "force" as an element of 18 U.S.C. § 2241(a); and (2) impeachment pertaining to I.R.'s allegedly "inconsistent testimony throughout the trial." Civ. Doc. 1 at 28–29, 31; Civ. Doc. 1-1 at 2–11; Crim. Doc. 90 at 28–29, 31; Crim. Doc. 90-1 at 2–11. Holland argues that the term "force" was neither defined in nor substantially covered by the Court's jury instructions. Civ. Doc. 1 at 31; Civ. Doc. 1-1 at 2–11; Crim. Doc. 90 at 31; Crim. Doc. 90-1 at 2–11. Holland relies on Ms. Malmgren's testimony that the medical findings did not support the use of force:

> [I]n the description of the findings, I don't see anything that goes along with force, because in order to get to where [Dr. Mbuthuma] said he found the injuries, . . . if there was force to get there, then I would have an expectation that there would be findings on other anatomical locations, stuff that comes first. You have to go through certain areas to end up where these findings were found.

Crim. Doc. 80 at 31. Holland also relies on Ms. Malmgren's opinion that penetration into the vaginal canal would be "[d]ifficult, if not impossible" when the victim is in a seated position. Civ. Doc. 1 at 29; Civ. Doc. 1-1 at 5; Crim.

Doc. 80 at 30–31; Crim. Doc. 90 at 29; Crim. Doc. 90-1 at 5.

"Generally, district courts have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts," and a conviction will not be reversed "on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (internal citation and quotation marks omitted). The Court gave the following jury instruction on "Aggravated Sexual Abuse: by Force" pursuant to 18 U.S.C. § 2241(a):

> It is a Federal crime in the special maritime jurisdiction of the United States and the territorial jurisdiction of the United States to sexually abuse another person *by using force*.
>
> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>
> (1)    the Defendant caused [I.R.] to participate in a sexual act;
>
> (2)    the Defendant *used force* against [I.R.];
>
> (3)    the Defendant did these acts knowingly; and
>
> (4)    the acts occurred within the special maritime jurisdiction of the United States *or* the territorial jurisdiction of the United States.
>
> The term "sexual act" means:
>
> • The penetration – however slight – of another person's anal or genital opening by a hand, finger, or any object, with an

> intent to abuse, humiliate, harass, or degrade the person, or
> to arouse or gratify the sexual desire of the Defendant.

> If you find beyond a reasonable doubt that the crime occurred at
> the location described in the indictment, that location is within the
> special maritime or territorial jurisdiction of the United States.

Crim. Doc. 57 at 11 (emphasis added); *see also* Crim. Doc. 80 at 63–64, 123.

This instruction followed the language of pattern jury instruction O79.1,

only omitting language pertaining to threats and sexual acts not alleged in the

indictment. *See* 11th Cir. Pattern Jury Instr. (Crim.) O79.1 (2016). The jury

then found that Holland was guilty of aggravated sexual abuse with force.

Crim. Doc. 58. In affirming Holland's conviction, the Eleventh Circuit found,

in relevant part, that there was sufficient evidence to support the second and

third elements of the offense, namely that Holland used force against I.R. and

acted knowingly. *Holland*, 796 F. App'x at 632. The court explained:

> As to the second and third elements, I.R. testified that Mr. Holland
> digitally penetrated her as she told him to stop and pushed his arm
> away. A.T. and K.L. did not see the alleged sexual abuse, but they
> testified that I.R. moved away from Mr. Holland on several
> occasions, and that he continued to either move closer to her or
> pull her closer to him. Ms. Crawford, moreover, testified that I.R.
> was terrified and crying after her encounter with Mr. Holland.
> Finally, Dr. Mbuthuma stated that I.R.'s vaginal injuries were
> consistent with forceful digital penetration. This evidence was
> sufficient.

> . . . "When all of the relevant evidence and testimony is combined,
> sufficient evidence exists to support a jury's conclusion" that Mr.
> Holland knowingly caused I.R. to engage in a sexual act by force.
> The jury . . . chose to believe I.R.'s testimony that Mr. Holland

27

repeatedly pulled her closer to him, ignored her requests for him to stop, and used force to digitally penetrate her. It credited A.T.'s and K.L.'s testimony that Mr. Holland kept moving closer to I.R. each time she moved away, making her visibly uncomfortable. It elected to believe Ms. Crawford's characterization of I.R.'s reaction immediately following her experience in the hot tub. Finally, it chose to accept Dr. Mbuthuma's testimony that I.R.'s injuries were consistent with forceful digital penetration and not accepted Ms. Malmgren's testimony that I.R.'s injuries could have been caused by something besides forceful digital penetration.

*Id.* (internal citation omitted).

Holland now relies on Ms. Malmgren's testimony that the medical findings did not support the use of force, but as shown above, the jury did not accept her testimony and, instead, decided to credit other evidence that supported forceful digital penetration. While Holland notes that the term "force" is not defined in the statute, there is no indication that the jury was confused as to either the meaning of the term as used in 18 U.S.C. § 2241(a) or as to the sufficiency of the evidence to support the force element of the offense. Section 2241(a) requires only "*some sort of force* or threats to cause another person to engage in a sexual act" and does not require "an element of *physical* force." *United States v. Dickerson*, 567 F. App'x 754, 756–57 (11th Cir. 2014) (per curiam) (emphasis in original). Therefore, as Holland has not demonstrated that his counsel was deficient when she failed to offer a different jury instruction or to object to the Court's instruction regarding "force" as an element of 18 U.S.C. § 2241(a), his claims on that basis must be denied.

Holland further argues his trial counsel was ineffective when she failed to offer a proper jury instruction on impeachment. However, even assuming that counsel was deficient, there was no resulting prejudice because the Court nevertheless proceeded to give an instruction titled "Impeachment of Witnesses Because of Inconsistent Statements." *See* Crim. Doc. 80 at 61–62. Moreover, the Court's instruction was not misleading, because it followed the language of pattern jury instruction B6.1 and read as follows:

> You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something that was different from the testimony the witness gave during this trial.

> But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Crim. Doc. 57 at 6; 11th Cir. Pattern Jury Instr. (Crim.) B6.1 (2016); *see also* Crim. Doc. 80 at 61–62.[13]

Counsel did not object to the Court's instructions either before or after

---

[13] Pattern jury instruction B6.2, which the Court referenced during the trial, overlaps with pattern jury instruction B6.1, but it also includes language pertaining to felony conviction, which was inapplicable to Holland's case.

they were given to the jury, *see id.* at 65, 128, and she cannot be deemed ineffective for failing to assert a meritless objection. *See Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013) (stating that counsel's failure to raise a meritless issue does not constitute deficient performance.). Therefore, having failed to demonstrate either deficient performance or resulting prejudice, Holland is not entitled to habeas relief on Grounds Ten and Eleven.

### F. Ground Thirteen

In Ground Thirteen, Holland alleges that the cumulative effect of his trial counsel's errors was so serious as to deprive him of a fair trial. Civ. Doc. 1 at 36; Crim. Doc. 90 at 36. "Where there is no error or only a single error, there can be no cumulative error." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). Because the Court has found no error with respect to Grounds One through Twelve, there can be no cumulative error. Therefore, Ground Thirteen is denied.

### V. CONCLUSION

Finding Petitioner advances no argument warranting relief under 28 U.S.C. § 2255, it is hereby **ORDERED**:

1.    The Motion (Civ. Doc. 1; Crim. Doc. 90) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk of Court** is directed to enter judgment denying the Motion and dismissing this action with prejudice, to terminate any pending motions, and to close the file.

3.    If Petitioner appeals this Order, **the Court denies a certificate of appealability**.[14] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of March, 2025.

BRIAN J. DAVIS
United States District Judge

---

[14] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court will deny a certificate of appealability.

Jax-11 3/3
c:
Counsel of Record
Brian James Holland, #70151-018

32